**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2570-22

IN THE MATTER OF DENIAL OF
THIRD PARTY HEARING
REQUEST OF P.T. JIBSAIL
FAMILY LIMITED PARTNERSHIP
FILE NO. 1515-06-0012.1 WFD
170001; WFD 180001; OFFICE OF
LEGAL AFFAIRS FILE NO. 19-06.

_____

Argued January 22, 2025 – Decided May 13, 2025

Before Judges Gilson, Firko and Augostini.

On appeal from the New Jersey Department of Environmental Protection.

Michael G. Sinkevich argued the cause for appellant Janine Morris Trust (Lieberman Blecher & Sinkevich, PC, attorneys; Michael G. Sinkevich, of counsel and on the briefs).

Zachary A. Klein argued the cause for respondent P.T. Jibsail Family Limited Partnership (Cullen and Dykman, LLP, attorneys; Amie C. Kalac and Neil Yoskin, of counsel and on the brief).

W. Conor Kennedy, Deputy Attorney General, argued the cause for respondent New Jersey Department of Environmental Protection (Matthew J. Platkin,

Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; W. Conor Kennedy, on the brief).

PER CURIAM

On May 19, 2017, the New Jersey Department of Environmental Protection (DEP) issued a Waterfront Development Permit (2017 WFD Permit) to defendant P.T. Jibsail Family Limited Partnership (Jibsail), in part, to build an extension to its existing recreational dock. In 2018, Jibsail built the extension several inches beyond the scope of the permit. In March 2019, Jibsail applied for and was granted a technical permit modification (2019 Modification Permit). On April 23, 2019, a neighboring property owner, Janine Morris Trust (JMT), filed an adjudicatory hearing request regarding the 2019 Modification Permit.

The DEP denied JMT's request, finding that JMT lacked standing. The DEP also rejected JMT's adjudicatory hearing request regarding the 2017 WFD Permit as time barred. On April 28, 2023, JMT appealed the DEP's decision. On December 18, 2024, JMT filed a motion seeking to amend its notice of appeal to "clarify" that its appeal included a direct challenge to the issuance of the 2019 Modification Permit.

Based upon our holding in Musconetcong Watershed Ass'n v. N.J. Dept. of Env't Prot., 476 N.J. Super. 465 (App. Div. 2023), the DEP's determination

2

became a final agency decision when it denied JMT's request for an adjudicatory hearing to challenge the DEP's decision. Thus, on this appeal, we address the DEP's decision denying JMT's adjudicatory hearing request as to both the 2017 WFD Permit, and the 2019 Modification Permit as well as the merits of the 2019 Modification Permit.

Having reviewed the administrative record and applicable law, we affirm the DEP's determination that JMT was not entitled to an adjudicatory hearing to challenge either the 2017 WFD Permit or the 2019 Modification Permit. We also affirm the DEP's final determination granting Jibsail its 2019 Modification Permit.

I.

Jibsail and JMT are neighboring waterfront property owners in the Borough of Lavallette. In 2017, Jibsail applied for a waterfront development permit to build "a 4' x 185' pier dock extension from an existing permitted 128' pier dock" and to "install two 12' x 12' open type boat lifts and remove one boat lift located at the end of the [current] pier dock." The DEP regulates development on "any waterfront upon any navigable water" pursuant to the Waterfront Development Act, N.J.S.A. 12:5-1 to -11. Under N.J.S.A. 12:5-3(a),

3

any "construction or alteration of a dock" requires a DEP permit, unless one of the enumerated exemptions applies.

As required, on March 28, 2017, Jibsail sent notices to its neighboring property owners to advise them of the proposed construction to the dock and alert them to the procedure and timeframe for objecting. Jibsail sent the required notice to JMT detailing the proposed application and attaching a copy of the survey. The record is void of JMT filing any objection to Jibsail's application.

After reviewing Jibsail's application, the DEP required two revisions of the application, which resulted in the length of the dock being shortened by approximately twenty feet. On May 19, 2017, the DEP approved Jibsail's application and granted the 2017 WFD Permit, as modified, allowing for a 4' x 163.7' dock extension, two 12' x 12' open-type boat lifts and the removal of one boat lift. On June 7, 2017, the DEP published the notice of approval in the DEP Bulletin. The United States Army Corps of Engineers also approved Jibsail's 2017 WFD Permit, as modified.

On June 26, 2018, the DEP sent a notice of violation to Jibsail because the newly constructed dock extension did not comply completely with the permit specifications and was 1.7 feet out of compliance with the approved plan. As

4

constructed, the dock was 1.7 feet further away from JMT's property than originally planned.

On October 30, 2018, Jibsail applied for a modified permit authorizing the 1.7 foot discrepancy and other technical deficiencies. In support of its application, Jibsail attached a policy compliance statement examining whether the proposed permit application complied with the Coastal Zone Management (CZM) Rules. On March 20, 2019, the DEP approved Jibsail's 2019 Modification Permit, a copy of which was forwarded to JMT.

On April 23, 2019, JMT filed an adjudicatory hearing request regarding both the 2017 WFD Permit and the 2019 Modification Permit. On March 14, 2023, the DEP's Office of Legal Affairs denied JMT's adjudicatory hearing request, appealing both the 2017 WFD Permit and the 2019 Modification Permit. With regard to the 2017 WFD Permit, which JMT contended it had timely objected to, the DEP determined that JMT filed its objection "several years" late and did not demonstrate "substantial compliance within the statutory time frame" to request a hearing. Thus, the DEP concluded that Jibsail's request for a hearing as to the 2017 WFD Permit was time barred.

Regarding the 2019 Modification Permit, the DEP concluded that JMT lacked standing because it failed to "demonstrate: (1) a right to a hearing under

the applicable statute, or (2) a 'particularized property interest' of constitutional significance."  N.J.S.A. 52:14B-3.2.

JMT presents two arguments for our consideration on appeal: (1) the DEP's denial of an adjudicatory hearing was arbitrary, capricious, and unreasonable; and (2) the DEP's issuance of the 2019 Modification Permit was also arbitrary, capricious, and unreasonable and lacked the support of credible evidence in the record.

II.

Appellate review of an agency's decision is limited.  Pub. Serv. Elec. & Gas Co. v. N.J. Dep't of Env't Prot., 101 N.J. 95, 103 (1985).  Reversal is not warranted unless the agency's decision is:  "(1) . . . arbitrary, capricious, or unreasonable; (2) . . . violated express or implied legislative policies; (3) . . . offended the State or Federal Constitution; or (4) the findings on which it was based were not supported by substantial, credible evidence in the record."  Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dep't of Env't Prot., 191 N.J. 38, 48 (2007).

Moreover, "[i]n reviewing an administrative agency's decision, we will grant considerable deference to the agency's expertise, where such expertise is a relevant factor."  In re Petition of S. Jersey Gas Co., 447 N.J. Super. 459, 480

6

(App. Div. 2016); In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 489 (2004).  A reviewing court "may not second-guess those judgments of an administrative agency which fall squarely within the agency's expertise."  In re Stream Encroachment Permit, 402 N.J. Super. 587, 597 (App. Div. 2008). "Where the determination of the operational facts is committed to the expert discretion of the administrative tribunal, the judicial authority cannot substitute its judgment for that of the administrative tribunal."  Bailey v. Driscoll (Bailey II), 19 N.J. 363, 375 (1955) (quoting In re Plainfield-Union Water Co., 11 N.J. 382, 396 (1953)).

"Ordinarily, [the] DEP is given great deference when it applies its considerable expertise and experience to the difficult balance between development and conservation."  Stream Encroachment Permit, 402 N.J. Super. at 597 (quoting Crema v. N.J. Dep't of Env't Prot., 192 N.J. Super. 505, 510 (App. Div. 1984)).  "However, '[w]hile [a reviewing court] must defer to the agency's expertise, we need not surrender to it.'"  Pinelands Pres. All. v. State, Dep't of Env't Prot., 436 N.J. Super. 510, 524 (App. Div. 2014) (quoting N.J. Chapter of Nat'l Ass'n of Indus. & Off. Parks v. N.J. Dep't of Env't Prot., 241 N.J. Super. 145, 165 (App. Div. 1990)).  "The party who challenges [the] DEP's decision to permit development of a certain location has the 'burden of

demonstrating, not that the agencies' action was merely erroneous, but that it was arbitrary.'" Stream Encroachment Permit, 402 N.J. Super. at 597 (quoting Crema, 192 N.J. Super. at 510).

Furthermore, although deference must be given "to the agency's findings of facts, and some deference to its interpretation of statutes and regulations within its implementing and enforcing responsibility, [the appellate court is] in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Utley v. Bd. of Rev., Dep't of Lab., 194 N.J. 534, 551 (2008) (internal citations and quotation marks omitted).

A. Right to an Adjudicatory Hearing.

JMT contends that the DEP's denial of its request for an adjudicatory hearing was arbitrary, capricious, and unreasonable. JMT argues that it has a particularized property interest sufficient to entitle it to an adjudicatory hearing.

The Administrative Procedure Act (the Act) "define[s] and circumscribe[s]" a third-party's right to object and request a formal administrative hearing to challenge the issuance of a permit that may infringe upon their property rights. In re Riverview Dev., LLC, 411 N.J. Super. 409, 424-25 (App. Div. 2010). The Act provides "third-party objectors" with the opportunity "to present their concerns about proposed permits to agency

decision-makers before they reach a final determination" by affording "all interested persons . . . [a] reasonable opportunity to submit data, views or arguments, orally or in writing, during any proceedings involving a permit decision . . . ." Id. at 425 (alteration in original) (citing N.J.S.A. 52:14B-3.1(a)).

Once a final agency decision is made, the Act construes more narrowly a third-party's right to an adjudicatory hearing and "strictly limits [those] situations . . . ." Id. at 424. Under the Act, a third-party is defined as any person other than:

> a. An applicant for any agency license, permit, certificate, approval, chapter, registration or other form of permission required by law;
>
> b. A State agency; or
>
> c. A person who has particularized property interest sufficient to require a hearing on constitutional or statutory grounds.
>
> [N.J.S.A. 52:14B-3.2.]

By limiting a third-party's right to an adjudicatory hearing, "the Legislature unmistakably intended to prevent the processing of permit applications by State agencies from being bogged down by time consuming and costly formal hearings in the [Office of Administrative Law.]" In re Riverview Dev., 411 N.J. Super. at 424; see also N.J.S.A. 52:14B-3.1(c). Thus, to warrant an adjudicatory

hearing, a third-party must demonstrate a "particularized property interest" based upon either constitutional or statutory grounds. N.J.S.A. 52:14B-3.1(c).

The CZM Rules establish the procedure and timeframe for submitting an objection and requesting an adjudicatory hearing. Specifically, a third-party objector must submit a written request for an adjudicatory hearing to the Office of Legal Affairs within thirty days after the publication of notice of the DEP's permit decision in the DEP Bulletin. N.J.A.C. 7:7-28.1(b). A request submitted after this deadline "shall" be denied. Ibid. If the request is timely, however, the DEP must respond within thirty days. Musconetcong Watershed Ass'n, 476 N.J. Super. at 482 (citing N.J.A.C. 1:1-4.1(a)).

1. 2017 WFD Permit.

JMT requests an adjudicatory hearing to challenge the DEP's issuance of the 2017 WFD Permit, as well as the 2019 Modification Permit. JMT argues that both applications were "barren" of evidence that JMT's "navigation and access will not be negatively impacted" by Jibsail's construction of the dock extension.

The DEP denied JMT's request for a hearing on the 2017 WFD Permit as untimely. There is no dispute that the record is void of evidence of JMT filing a timely written request for an adjudicatory hearing challenging the 2017 WFD

10

Permit. We are satisfied the DEP correctly determined that JMT's request for an adjudicatory hearing as to the 2017 WFD Permit was time barred by N.J.A.C. 7:7-28.1(b) and therefore was properly and mandatorily denied.

2. 2019 Modification Permit.

We turn next to JMT's challenge to the DEP's denial of an adjudicatory hearing and decision regarding the merits of the 2019 Modification Permit. JMT, as a third-party objector, does not have an automatic right to an adjudicatory hearing. To be entitled to an adjudicatory hearing under the Act, a third-party must show "a particularized property interest sufficient to require a hearing on [either] constitutional or statutory grounds." N.J.S.A. 52:14B-3.2.

Neither the Waterfront Development Act nor the CZM Rules provide third-party objectors with an automatic statutory right to an adjudicatory hearing to challenge a permit decision. In re Riverview Dev., 411 N.J. Super. at 427; see also N.J.S.A. 12:5-1 to -11; N.J.A.C. 7:7-28.l(e); N.J.S.A. 52:14B-3.3. JMT does not identify another statutory provision granting it a right to a hearing. We are satisfied that the DEP did not err in concluding that JMT failed to identify a statutory right to an adjudicatory hearing.

If a party cannot identify an express statutory right to a hearing, then the question becomes whether a party has a "particularized property interest"

sufficient to require a hearing on constitutional grounds. N.J.S.A. 52:14B-3.2. JMT contends that Jibsail's approved "dock extension angles in a westerly direction, thereby cutting across [JMT's] access to the navigable channel of Barnegat Bay," which creates a "navigational hazard" uniquely impacting JMT. JMT contends its "riparian right to freely navigate to and from the channel without obstruction" has been infringed upon by Jibsail's extended dock. JMT further argues that the dock has created a safety hazard not only to JMT when "maneuver[ing] its watercrafts in or out of its waterfront facilities" but to other "boaters, kayakers, and paddle boaters . . . ." The DEP determined that JMT's general "[n]avigational interests . . . do not rise to a particularized property interest sufficient to create a right to an adjudicatory hearing." We discern no basis to conclude that the DEP's determination in this regard was arbitrary, capricious, or unreasonable.

The right to an adjudicatory hearing "turn[s] upon the relative strength of the property interests" of the third-party. In re Riverview Dev., 411 N.J. Super. at 425. As the Court in In re Fresh Wetlands Statewide Gen. Permits noted, our analysis must begin by "identify[ing] the nature of the property interest at stake." 185 N.J. 452, 464 (2006). "The more general and attenuated [the] property

12

interest is, the less likely that it will be sufficient to trigger a hearing under the statute." In re Riverview Dev., 411 N.J. Super. at 425-26.

As we addressed in our prior decision involving the parties' first appeal pertaining to Jibsail's dock and the grant of a tidelands license to Jibsail, In re P.T. Jibsail Fam. Ltd. P'ship, No. A-0699-22 (App. Div. May 8, 2024), Barnegat Bay is considered the tidelands area, which is owned by the State. The State issued licenses to both Jibsail and JMT, allowing them to make reasonable use of the water surrounding their property. Panetta v. Equity One, Inc., 190 N.J. 307, 318 (2007). Thus, as we explained, a "licensee's riparian right to use adjacent water . . . is no stronger on water outside of the license box than the riparian right of any other member of the public and is likewise subject to the influence of neighboring structures . . . ." In re P.T. Jibsail, slip. op. at 20.

Additionally, JMT argued that Jibsail's dock extension was dangerous to other area residents and boaters. This argument undercuts JMT's assertion of a particularized property interest; rather, it supports the DEP's conclusion that JMT has only shown a generalized property interest. Further, at the time of Jibsail's 2017 application, JMT submitted letters expressing their concerns to the DEP, and other neighboring property owners expressed similar concerns.

13

The DEP considered these concerns before issuing the 2017 WFD Permit to Jibsail.

As we explained in Spalt v. N.J. Dept. of Env't Prot., 237 N.J. Super. 206, 212 (App. Div. 1989), "[f]ear of damage to one's recreational interest or generalized property rights with other property owners is insufficient to demonstrate a particularized property right or other special interest." Moreover, "[f]ear of damage to one's . . . generalized property rights shared with other property owners is insufficient to demonstrate a particularized property right[.]" In re AMICO/Tunnel Carwash, 371 N.J. Super. 199, 211 (2004). Thus, the DEP's determination that JMT failed to establish a particularized property right entitling it to an adjudicatory hearing is supported by the record and is not an arbitrary, capricious, or unreasonable determination.

B. Issuance of the 2019 Permit Modification.

JMT also challenges the merits of the DEP's grant of Jibsail's 2019 Permit Modification. On December 18, 2024, JMT filed a motion seeking to amend its notice of appeal nunc pro tunc to clarify its intent to challenge the merits of the DEP's issuance of the 2019 Modification Permit to Jibsail. Jibsail filed opposition, claiming the relief sought is untimely and prejudicial. The DEP does not oppose JMT's application.

Generally, a party is limited to appeal from the order identified in its notice of appeal. See R. 2:5-1(f)(2)(ii); Sikes v. Twp. of Rockaway, 269 N.J. Super. 463, 465-66 (App. Div. 1994). We, however, have discretion to allow a party to address an issue not directly identified in its notice of appeal. JMT's case information statement (CIS) identifies its challenge to the merits of the DEP's final decision granting the 2019 Modification Permit. See Synnex Corp. v. ADT Sec. Servs. Inc., 394 N.J. Super. 577, 588 (App. Div. 2007) (holding that an issue identified on appellant's CIS but not on notice of appeal is properly before the appellate court); see also Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 461 (App. Div. 2002) (finding that an order included in CIS may be addressed on appeal even though not listed in notice of appeal). Moreover, Jibsail addresses in its merits brief JMT's substantive challenges to the DEP's issuance of Jibsail's 2019 Modification Permit. Thus, we discern no prejudice in granting JMT's motion to amend its notice of appeal, and thus, will consider the arguments of the parties challenging the merits of the 2019 Modification Permit.

JMT contends the DEP's issuance of the 2019 Modification Permit was arbitrary, capricious, and unreasonable and not supported by the credible evidence because Jibsail failed to demonstrate (1) a "need" for the modification

15

permit, and (2) that its dock would not hinder navigation or access to adjacent waters. We are satisfied the DEP's decision to grant Jibsail the 2019 Modification Permit was not unreasonable, arbitrary or capricious, and is well-grounded in the substantial evidence in the record.

The DEP, the agency with expertise and authority to regulate development on "any waterfront upon any navigable water," approved Jibsail's 2019 Modification Permit "because the alternative solution of requiring Jibsail to move and resecure its dock to bring it" in compliance with the approved 2017 WFD Permit would cause far more environmental disturbances to the subaquatic vegetation habitat. JMT fails to point to any substantive evidence in the record to the contrary.

The DEP regulates development consistent with the CZM Rules, N.J.A.C. 7:7-1.1 to -29.10, which includes the Recreational Docks and Piers Rule (Docks Rule), N.J.A.C. 7:7-12.5(a), which prohibits development that would hinder navigation or access to adjacent moorings, water areas, docks and piers, and the Submerged Vegetation Habitat (SVH) Rule, N.J.A.C. 7:7-9.6, which governs the placement of docks and mooring area in a submerged aquatic vegetation habitat. In evaluating permit applications, the DEP endeavors to protect "the

coastal ecosystem, an area rich in natural features . . . ." Tumino v. Long Beach Tp., 319 N.J. Super. 514, 523 (App. Div. 1999).

The record supports the DEP's decision to approve the de minimis modification by granting the 2019 Modification Permit as more consistent with these long-standing regulations. The Docks Rule requires an applicant to demonstrate that the proposed construction will not interfere with navigation. N.J.A.C. 7:7-12.5(b)(9). While JMT contends that the 2019 Modification Permit interferes with navigation, and therefore, violates the CZM Rules, following its issuance of the permit violation and review of the matter, the DEP found that the de minimis extension of Jibsail's dock caused no such interference. JMT provided no expert testimony to support its contrary contention or refute the opinion of Jibsail's Professional Engineer.

Moreover, the U.S. Army Corps of Engineers reviewed the application and did not identify any issues related to navigability or access. It is also worth noting that the 1.7 foot mislocation of Jibsail's dock is to the south—farther away from JMT's property. While we are not reviewing the original 2017 WFD Permit, it is also worth noting that JMT fails to mention that the DEP required Jibsail to revise its original construction plan and reduce the length of the dock from 185 feet to 167.3 feet.

According to the SVH Rule, docks must extend into water that is at least "four feet at mean low water . . . where the boats will be moored" in depth to protect the habitat. N.J.A.C. 7:7-9.6(b)(6)(vi). As the DEP points out, "sufficient water depths protect[] SAV," and the DEP determined that granting the 2019 Modification Permit complied with the SVH Rule. The DEP further concluded that the "needs portion" of the Docks Rule was satisfied because the dock extension not only complied with the SAV Rule but also the de minimis extension did not "result in new or additional impacts to any special area." N.J.A.C. 7:7-27.5(d). Thus, the DEP concluded that a "technical modification" was a more appropriate and less disruptive resolution to the deviation and would "not result in new or additional impacts to any special area." N.J.A.C. 7:7-27.5(d). Based upon our review of the record, those conclusions are reasonable, are not arbitrary or capricious, and are supported by credible evidence.

For all these reasons, we affirm the DEP's decision denying JMT an adjudicatory hearing on the 2017 WFD Permit and the 2019 Modification Permit. We also affirm the final agency determination granting Jibsail's 2019 Modification Permit. Any remaining arguments raised by JMT are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

18